UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DENNIS BALSLEY,

                              Plaintiff,

        v.

BNSF RAILWAY COMPANY, a
Delaware Corporation

                              Defendant.

No. 3:09-cv-05168-RJB

ORDER DENYING MOTIONS FOR
SUMMARY JUDGMENT

        This matter comes before the Court on Defendant's motion for summary judgment (Dkt. 40) and Plaintiff's motion for summary judgment (Dkt. 39). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file herein.

## FACTUAL AND PROCEDURAL HISTORY

        Defendant BNSF Railway Company ("BNSF") operates trains that run between Centralia and Vancouver, Washington. Dkt. 41-3. Plaintiff Dennis Balsley began working for BNSF in 1976 and became a locomotive engineer for BNSF in 1979. Dkt. 55-1, at 2.

        On April 6, 2006, Mr. Balsley was the engineer on a train traveling from Vancouver to Tacoma, Washington. Dkt. 55-17. Because Mr. Balsley's crew was about to exceed its maximum hours of service for that day, at approximately 10:15 pm a BNSF dispatcher directed Mr. Balsley to stop his train at an area known as Rocky Point to perform a crew change. *Id*. According to Mr. Balsley, when he stopped his train, the replacement crew was waiting for him

ORDER - 1

1    and a crew van (presumably to transport Mr. Balsley and his crew from the area) was located ten
2    to fifteen yards from his train.  *Id.*
3            In order to get from the train to the crew van, Mr. Balsley and his crew needed to
4    disembark the train down a ladder and walk to the van.  The surface of the area under the bottom
5    of the ladder and on least some ground on the route to the crew van was composed of mainline
6    ballast.  Dkt. 55-17.  Mainline ballast is crushed rock that serves three functions: (1) to allow
7    water drainage in railroad track areas; (2) to provide a foundational support for the weight of
8    railroad cars and locomotives that travel on railroad tracks; and (3) to prevent railroad tracks
9    from shifting or moving during railroad operations.  Dkt. 55-9, at 4-5.  *See also* 49 C.F.R. §
10   213.103.  BNSF standards for mainline ballast require crushed rock that is no larger than two and
11   one-half inches, meaning that mainline ballast should be composed of a mixture of small and
12   large angular rocks.  Dkt. 55-10.  Furthermore, according to the deposition testimony of Mr.
13   Balsley, the lighting in the Rocky Point area is non-existent or "poor at best." Dkt. 55-1, at 8.
14           Two other members of Mr. Balsley's crew successfully disembarked the train by
15   climbing down the ladder.  Dkt. 41-4, at 4.  According to Mr. Balsley, as he prepared to descend
16   the ladder, he looked down and observed what appeared to be "ordinary mainline ballast."  Dkt.
17   55-17.  As he stepped off the ladder and onto the ballast, the ballast under his left foot allegedly
18   shifted, causing Mr. Balsley to "turn over" or "twist" his left ankle.  *See* Dkts. 41-1, 55-7, 55-17.
19
20           On March 3, 2009, Mr. Balsley filed a complaint against BNSF under the Federal
21   Employers' Liability Act (FELA), 45 U.S.C. § 51, *et seq*.  Dkt. 1.  Mr. Balsley alleges that his
22   injuries stemming from the April 6, 2006 incident at Rocky Point were caused as a result of
23   negligence on behalf of BNSF.  *Id.*
24
25
26

ORDER - 2

On October 18, 2010, BNSF filed a motion for summary judgment.  Dkt. 40.  In its motion, BNSF argues that it is entitled to summary judgment because (1) Mr. Balsley cannot make out a prima facie case of negligence under the FELA and (2) even if Mr. Balsley can show negligence, his claim is precluded and preempted by other federal railroad statutes, namely the Federal Rail Safety Act (FRSA), 49 U.S.C. § 20101 *et seq*, and the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. § 10101 *et seq*.  *Id.*  On November 8, 2010, Mr. Balsley filed a response.  Dkt. 55.  On November 12, 2010, BNSF filed a reply.  Dkt. 62.

Also on October 18, 2010, Mr. Balsley filed a motion for summary judgment seeking to prevent BNSF's use of the affirmative defense of contributory negligence.  Dkt. 39.  Mr. Balsley argues that because BNSF cannot show a lack of due care by Mr. Balsley, BNSF should not be allowed the opportunity to assert the affirmative defense of contributory negligence afforded to it under the FELA.  *Id.*  On November 8, 2010, BNSF filed a response (Dkt. 56), while Mr. Balsley filed his reply on November 12, 2010 (Dkt. 61).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

BNSF's argument for summary judgment rests on two grounds: (1) that Mr. Balsley cannot show sufficient facts that would prove negligence and (2) that any negligence claim stemming from this incident is precluded by other federal statutes.  Mr. Balsley's argument for summary judgment seeks to prevent BNSF from asserting the affirmative defense of contributory negligence.

A. Negligence under FELA

ORDER - 4

The Federal Employers' Liability Act provides that employees of common-carrier railroads may recover for work-related injuries caused in whole or in part by their railroad-employer's negligence.  45 U.S.C. § 51.  The FELA was enacted in 1908 in order to provide railroad employees a remedy for injuries and death resulting from accidents on interstate railroads.  *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994).  Congress enacted the FELA because of its frustration with rail companies evading liability to their employees for injuries and death; consequently, the FELA strips such an employer of many of its common-law defenses.  *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 507-08 (1957).  However, while the FELA is to be construed liberally, it is not a workers' compensation statute, *Gottshall*, 512 U.S. at 543, nor does the FELA make the employer the insurer of the safety of its employees while they are on duty.  The basis of liability "is…negligence, not the fact that injuries occur."  *Ellis v. Union Pacific Ry. Co.*, 329 U.S. 649, 653 (1947).

The FELA does not define negligence.  Although the FELA "is founded on common-law concepts of negligence and injury, subject to such qualifications as Congress has imported into those terms," *Urie v. Thompson*, 337 U.S. 163, 182 (1949), courts do not necessarily look to the common law of any state for guidance as to what constitutes actionable negligence under the FELA.  *Glass v. Birmingham Southern R. Co.*, 905 So.2d 789, 794 (Ala. 2004).  Rather, "[w]hat constitutes negligence for [FELA's] purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes." *Urie*, 337 U.S. at 174.

Although common-law principles are not necessarily dispositive of questions arising under the FELA, unless they are expressly rejected in the text of the statute, common-law principles are entitled to great weight in a FELA analysis.  *Gottshall*, 512 U.S. at 543.

1    Therefore, in a FELA negligence case, the plaintiff bears the burden of proving the existence of a

2    duty owed by the defendant (that is, conduct unreasonable in the face of a foreseeable risk of

3    harm), a breach of that duty, causation, and damage. *Gottshall*, 512 U.S. at 538.

4         Here, the parties do not dispute that Mr. Balsley sustained injuries to at least his left

5    ankle.  If Mr. Balsley can show genuine issues of material fact as to any of the remaining

6    elements, summary judgment as requested by BNSF is inappropriate.

7         Under the FELA, a railroad employer owes its employees a duty to provide a safe place

8    to work.  *Blair v. Baltimore & Ohio R.R.,* 323 U.S. 600, 601 (1945); *Atchison, T. & S.F. Railway*

9    *Co. v. Buell*, 480 U.S. 557, 558 (1987).  A railroad breaches this duty when it fails to use

10   ordinary care under the circumstances or fails to do what a reasonably prudent person would

11   have done under the circumstances to make the working environment safe.  *Tiller v. Atlantic*

12   *C.L.R. Co*., 318 U.S. 54, 67 (1943).  That is, a railroad breaches its duty when it knew, or by the

13   exercise of due care should have known that the prevalent standards at use were inadequate to

14   protect the plaintiff and similarly situated employees.  *Van Gorder v. Grand Trunk Western R.R.,*

15   *Inc*., 509 F.3d 265, 269-70 (6th Cir. 2007); *Urie*, 337 U.S. at 178.

16        Mr. Balsley argues that BNSF breached its duty of care because it should have known

17   that requiring Mr. Balsley to disembark his train on to mainline ballast could result in his injury.

18   Dkt. 55, at 8-9.  Mr. Balsley contends that his injury was foreseeable to BNSF because BNSF

19   possessed reports of over sixty other employees who had reportedly been injured while working

20   on mainline ballast over a thirteen year period.  Dkt. 55-15.  Mr. Balsley also argues that a BNSF

21   safety training video that arguably discourages employees from walking on mainline ballast

22   shows that BNSF should have known of the risks associated with directing Mr. Balsley to

23   disembark his train on to mainline ballast.  Dkt. 55-14.

ORDER - 6

BNSF argues that the duty of care it owed to Mr. Balsley on April 6, 2006 "is the same as its duty to its other employees who work on mainline ballast." Dkt. 40, at 15.  BNSF contends that because federal regulations and BNSF rules "explicitly and implicitly require and permit railroaders to work on mainline ballast," holding BNSF liable for Mr. Balsley's injuries would create different duties of care for employees in the same physical workplace.  Dkt. 40, at 15-16. BNSF also argues that its duty of care must be viewed in light of the normal working requirements of Mr. Balsley's job.  *Id.*

There exist numerous issues of material fact, including (1) what BNSF's duty to Mr. Balsley was on April 6, 2006, and (2) whether that duty was breached.  Questions regarding the foreseeability of Mr. Balsley's injury, the reasonability of BNSF's duty, and what the prevalent standard of conduct was at the time of the incident are best left for the province of the jury. Accordingly, Mr. Balsley has raised at least some genuine issues of material fact as to the elements of his negligence claim under FELA.

B.  Preclusion

BNSF argues that even if Mr. Balsley can make a *prima facie* case of negligence, his claim is precluded because the Federal Railway Safety Act (FRSA) and the Interstate Commerce Commission Termination Act (ICCTA) conflict with his FELA claim.  Dkt. 40, at 18.

1.  *FRSA.*

BNSF contends that Mr. Balsley's claim (that working on mainline ballast is unsafe) is precluded by the Federal Railway Safety Act (FRSA) because (1) the FRSA can preclude FELA negligence claims, and (2) federal regulations cover the subject of working on mainline ballast. Dkt. 40, at 19-21.

The FRSA was enacted in 1970 with the purpose of promoting "safety in every area of railroad operations and reduc[ing] railroad-related accidents and incidents." 49 U.S.C. § 20101. Moreover, the FRSA contains an express preemption provision and provides that "[l]aws, regulations, and orders related to railroad safety...shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1).  The FRSA grants the Secretary of Transportation the authority to "prescribe regulations and issue orders for every area of railroad safety supplementing laws and regulations in effect [at the time of the FRSA's enactment]."  49 U.S.C. § 20103(a).  Pursuant to this directive, the Secretary, acting through the Federal Railroad Administration ("FRA"), has promulgated regulations under the FRSA covering track safety standards.  *See generally* 49 C.F.R. § 213.  According to BNSF, several of these regulations involve requirements "which may involve or require working on mainline ballast."  Dkt. 40, at 7.

Several courts have held that if a cause of action would be preempted by the FRSA if brought under state law, the cause is likewise precluded by the FRSA if it is brought under FELA.  *See, e.g., Nickels v. Grand Trunk Western Railroad, Inc*., 560 F.3d 426, 428 (6th Cir.2009) (FELA claim regarding alleged injury caused by ballast conditions precluded by FRSA); *Crabbe v. Consolidated Rail Corp.,* 2007 WL 3227584 (E.D.Mich. Nov. 1, 2007) (concluding that a FELA claim for a workplace injury was precluded by FRSA where plaintiff argued the defendant railroad negligently used improper sized ballast).  Under this analysis, for an FRSA regulation to preclude a FELA claim, a party "must establish more than that they 'touch upon' or 'relate to' that subject matter, and must show that "the federal regulations substantially subsume the subject matter" of the claim. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993).

BNSF's theory of preclusion rests on the assumption that the conduct of railroaders, to the extent they interact with mainline ballast, is "expressly, implicitly, and repeatedly" covered by federal regulations promulgated under the FRSA.  Dkt. 40, at 21.  BNSF relies on *Nickels* to support its contention that because federal regulations arguably permit railroaders' to work on mainline ballast, Mr. Balsley's FELA claim is thereby precluded by the FRSA.  Dkt. 62, at 8-9.

Indeed, the regulations cited by BSNF in support of its proposition include numerous duties of railroad employees that may involve some amount of walking on mainline ballast.  *See* Dkt. 40, at 7 (outlining several federal regulations that prescribe inspecting and maintaining various track conditions).  What is apparently absent, however, is a federal regulation that addresses the duty with which BNSF tasked Mr. Balsley on the evening of April 6, 2006: the descent of a locomotive ladder at night on to a surface composed of mainline ballast.  While the federal regulations cited by BNSF may arguably cover employees walking on mainline ballast, there is no indication that the federal regulations contemplate an employee traversing a ladder and transferring his weight from a locomotive to the ground.  BNSF's argument that the federal regulations cited subsume the conduct undertaken by Mr. Balsley on April 6, 2006, is therefore unconvincing, particularly when one compares the quality of physical conduct that might arguably be implied in the regulations to that which is required to disembark a train.

The record does not support BNSF's contention that federal regulations "substantially subsume the subject matter" of Mr. Balsley's claim.  *Easterwood*, 507 U.S. at 664.  Accordingly, summary judgment regarding this issue is not proper.

### 2.  *ICCTA*

BNSF also argues that holding BNSF liable under FELA for Mr. Balsley's injury would substantially regulate BNSF's operations by "reducing where railroaders can work to [twenty-

five percent] of BNSF's tracks." Dkt. 40, at 21.   The result, according to BNSF, would conflict

with the terms of the Interstate Commerce Commission Termination Act (ICCTA), which grants

the Surface Transportation Board (STB) exclusive jurisdiction over most matters of rail

regulation.  *Id.*

> The ICCTA, 49 U.S.C. § 10501, *et seq*, confers on the STB the authority to regulate
>
> (b)(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State...

49 U.S.C. § 10501(b).  The ICCTA also contains a pre-emption clause which provides that

"[e]xcept as otherwise provided in this part, the remedies provided under this part with respect to

regulation of rail transportation are exclusive and preempt the remedies provided under Federal

or State law."  *Id.*

BNSF contends that Mr. Balsley's claim would more than incidentally impact railroad

operations by requiring BNSF "to stop all of its employees from working on mainline ballast."

Dkt. 40, at 23.  Such an impact, according to BNSF, would infringe on the exclusive jurisdiction

of the STB to regulate rail transportation.  *Id.*

BNSF's argument (that a FELA negligence claim that impacts railroad operations is

precluded by ICCTA) is not persuasive.  Taken to its logical conclusion, BNSF's argument

would prevent nearly any type of recovery under the FELA for negligence, because holding a

defendant liable in a negligence action is designed, in part, to persuade the defendant to modify

its behavior or operations.  There is no evidence to suggest that precluding recovery under FELA

1   was the intent of the ICCTA.  As a result, BNSF is not entitled to summary judgment on this

2   issue.

3          For the reasons set forth above, BNSF's motion for summary judgement (Dkt. 40) should

4   be denied.

5      C.   Contributory negligence

6          Mr. Balsley also moves for summary judgment, seeking to prevent BNSF from asserting

7   the affirmative defense of contributory negligence.  Dkt. 39.  Mr. Balsley contends that because

8   "the record is devoid of any evidence that Plaintiff actually acted in a negligent manner," BNSF

9   should not be allowed the opportunity to assert the defense.  *Id*.

10

11         Under the FELA, a plaintiff "shall not be held to have assumed the risks of his

12  employment in any case where such injury or death resulting in whole or in part from the

13  negligence of any of the officers, agents, or employees of such carrier."  45 U.S.C. § 54.

14  However, the FELA does allow a railroad a contributory negligence defense.  45 U.S.C. § 53.

15  Contributory negligence is a careless act or omission on the plaintiff's part tending to add new

16  dangers to conditions that the employer negligently created or permitted to exist.  *Taylor v.*

17  *Burlington N. R.R.*, 787 F.2d 1309, 1316 (9th Cir. 1986).  In order to present a contributory

18  negligence defense, the defendant railroad has the burden of producing evidence showing

19  negligence on behalf of the plaintiff.  *See Birchem v. Burlington Northern R. Co.*, 812 F.2d 1047,

20  1049 (8th Cir. 1987); *Taylor*, 787 F.2d at 1314.

21

22         BNSF has produced enough evidence to make summary judgment on this issue

23  inappropriate.  This evidence includes the depositions of two BNSF experts who testify that,

24  based on Mr. Balsley's account of the incident, Mr. Balsley may have violated BNSF rules by

25  allegedly not ensuring that his footing was secure and by allegedly detraining with a bag over his

26

1   shoulder when he disembarked.  Dkt. 56.  Additionally, there exist genuine issues of material

2   fact regarding the specific actions that Mr. Balsley took as he disembarked his train.  Whether

3   Mr. Balsley acted carelessly and added new dangers to BNSF's allegedly negligence is a

4   question best left for the jury.  Accordingly, Mr. Balsley's motion for summary judgment (Dkt.

5   39) should be denied.

6                                              **ORDER**

7            Therefore, it is hereby **ORDERED** that Defendant's motion for summary judgment (Dkt.

8   40) and Plaintiff's motion for summary judgment (Dkt. 39) are **DENIED**.

9

10          The Clerk is directed to send uncertified copies of this Order to all counsel of record and

11  to any party appearing *pro se* at said party's last known address.

12          DATED this 22nd day of November, 2010.

13

14

15

16          ROBERT J. BRYAN
            United States District Judge