HONORABLE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

DENNIS BALSLEY,                                )
                                               )   NO. C09-5168 RJB
                 Plaintiff,                    )
                                               )   **DEFENDANT BNSF'S TRIAL**
         vs.                                   )   **BRIEF**
                                               )
                                               )
BNSF RAILWAY COMPANY, a Delaware               )
corporation                                    )
                                               )
                 Defendant.                    )
                                               )
                                               )
_____)

## STATEMENT OF FACTS

Engineer Dennis Balsley reported an injury to his left ankle while dismounting a locomotive in Rocky Point, Washington on April 8, 2006. He had begun his shift as a locomotive engineer at Vancouver, Washington at approximately 11:30 a.m. that day and was assigned to take a train from Vancouver to Tacoma. However, the train was delayed and did not leave for a number of hours. At around 10:00 p.m., Balsley was instructed by the dispatcher to stop his train on one of two mainline tracks (mainline track #1) at Rocky Point, in Kelso, so that his crew could be relieved and taken by van to Tacoma. Crew changes that take place between the origin and scheduled destination are common and prevent train crews from exceeding, or violating, the federal regulations governing the maximum hours of service in one day.

**MONTGOMERY SCARP MACDOUGALL, PLLC**
1218 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone  (206) 625-1801
Facsimile  (206) 625-1807

1        To get to the crew shuttle van required only that Balsley and the other (two) train
2    crew members step down from the locomotive, cross mainline track #2 and one siding
3    track, walk a few more steps to the street, then cross the street to the shuttle parked at a
4    mini mart / gas station. The entire distance to the shuttle was 10–15 yards. This is as an
5    everyday occurrence for train crews.

6        The ballast was flat and level and appropriate size for mainline ballast. Balsley
7    testified, and photographs confirm, that the ground surface was level. Balsley's expert
8    has not taken issue with the condition of the ballast.[1] Balsley also stated—and the
9    photographs also confirm—that the ballast was in good condition and had no defects.

10       Although it was nighttime, some light illuminated the area of the tracks from the
11   street light and the (open) mini mart / gas station across the street where the van was
12   waiting. Moreover, each crew member, including Balsley, had a lantern and Balsely
13   testified he could see the ground fine.

14       After the conductor and brakeman routinely and safely dismounted the
15   locomotive, Balsley placed his lantern on the locomotive platform and climbed down
16   the locomotive steps onto the ground between mainline tracks #1 and #2. Shortly before
17   descending the locomotive, Balsley said he looked at the ballast below and, as
18   mentioned above, saw that it was in fine condition. Balsley was 5'8'' and weighed in
19   excess of 300 pounds, and also had his "grip" (personal equipment bag) over his
20   shoulder as he stepped down. He testified that as he set his left foot down on the ballast,
21   and began to place his other foot down, he twisted his left ankle.

22       BNSF conducted a post-incident inspection and found nothing wrong with the
23   ballast. Four days after the incident, on April 12, 2006, Balsley filled out an Employee
24   Personal Injury/Occupational Illness Report, which asked in part:

25

26       [1] Ballast is the crushed rock in between and outside of railroad tracks that supports the railroad tracks and
facilitates track drainage. *See* 49 C.F.R. § 213.103 (the ballast used to support the track must transmit and distribute
27   the load of the track, restrain the track, provide adequate drainage and maintain proper track crosslevel, surface, and
alignment).

**MONTGOMERY SCARP MACDOUGALL, PLLC**
1218 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone  (206) 625-1801
Facsimile  (206) 625-1807

WAS THERE ANYTHING WRONG WITH THE EQUIPMENT, WORK PROCEDURES, OR WORK AREA WHICH LED TO THE ACCIDENT/ INJURY?

Balsley checked the box "***No***."

In discussions with BNSF supervisors during the same time period, Balsley repeatedly made it clear that he took no exception to the condition of the ground or the ballast.

During Balsley's nearly three-decade career as a locomotive engineer leading up to April 8, 2006—a career in which he disembarked locomotives onto mainline ballast countless times as part of his job duties including regular crew changes—he was never injured detraining onto mainline ballast. The railroad is not being charged with constructive knowledge of a defective condition in the ballast and failing to remedy it. There is no evidence that the ballast was uneven or defective. There is no evidence that the lighting was insufficient.

# ARGUMENT AND AUTHORITIES

As a general matter, since plaintiff's action is brought pursuant to the FELA, federal law controls all substantive issues.[2]

## 1.   The Federal Employers' Liability Act is not an insurance statute or workers' compensation system.

The FELA imposes liability for work-related injuries for railroad employees if those injuries were caused by the railroad's negligence.[3] Section 1 provides that "[e]very common carrier by railroad . . . shall be liable in damages to any person

---

[2] *Erie Railroad Co. v. Winfield*, 244 U.S. 170 (1917); *Norfolk & Western Ry. v. Liepelt*, 444 U.S. 490 (1980).

[3] *See* 45 U.S.C. § 51; *Atchison, T. & S.F.R. Co. v. Toops*, 281 U.S. 351, 354, 50 S.Ct. 281,74 L.Ed. 896 (1930) (An employee bringing a FELA claim must prove that the railroad was negligent and that such negligence was the cause of the injury); *Northwestern P.R. Co. v. Bobo*, 290 U.S. 499, 502–03, 54 S.Ct. 263, 78 L.Ed. 462 (1934) ("The jury may not be permitted to speculate as to its cause, and the case must be withdrawn from its consideration, unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the employer.").

MONTGOMERY SCARP MACDOUGALL, PLLC
1218 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone  (206) 625-1801
Facsimile  (206) 625-1807

suffering injury while he is employed by such carrier . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."[4] A plaintiff, however, may not recover simply because he was injured in the course of his employment.[5] The "FELA does not make the employer the insurer of the safety of its employees while they are on duty. The basis of liability is. . . negligence, not the fact that injuries occur."[6]

"Absent express language to the contrary, the elements of a FELA claim are determined by reference to the common law."[7] Thus, a FELA plaintiff must prove *each* element of a FELA cause of action: duty, breach, injury, and proximate cause.[8]

**A.      BNSF's has the same duty of reasonable/ordinary care to all of its employees who work on mainline ballast.**

BNSF's duty of care to Balsley is the same as its duty of care to track inspectors, maintenance of way employees, and other railroaders who work on mainline ballast. Dissimilar treatment of claims would have the untenable result of making the railroad safety regulations virtually meaningless: "[t]he railroad could at one time be in compliance with federal railroad safety standards with respect to certain classes of plaintiffs [(such as track inspectors)] yet be found negligent under the FELA with respect to other classes of plaintiffs [(such as trainmen)] for the ***very same conduct***."[9]

---

[4] 45 U.S.C. § 51.

[5] *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) ("FELA does not make the employer the insurer of the safety of [its] employees while they are on duty. The basis of [its] liability is negligence, not the fact that injuries occur.").

[6] *Ellis v. Union Pacific Ry. Co.*, 329 U.S. 649, 653, 67 S.Ct. 598, 91 L.Ed. 572 (1947).

[7] *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165–66, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007).

[8] See, *e.g.*, *Sorrell*, 549 U.S. at 169, 172–77.

[9] *Nickels*, 560 F.3d at 430 (emphasis added); *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 443 (5th Cir. 2001) (both cases quoting *Waymire v. Norfolk & W. Ry. Co.*, 65 F.Supp.2d 951, 955 (D.Ind.1999), *aff'd*, 218 F.3d 773 (7th Cir. 2000), *cert. denied*, 531 U.S. 1112 (2001)). Other courts also have reached this conclusion. *See, e.g., Dickerson v. Staten Trucking, Inc.*, 428 F.Supp.2d 909, 913-14 (E.D.Ark.2006); *Major v. CSX Transp., Inc.*, 278 F.Supp.2d 597, 608-10 (D.Md.2003); *In re Amtrak "Sunset Ltd." Train Crash*, 188 F.Supp.2d 1341, 1349 (S.D.Ala.2000); *Rice v. Cincinnati, New Orleans & Pac. Ry. Co.*, 955 F.Supp. 739, 740-41 (D.Ky.1997); *Thirkill v. J.B. Hunt Transp., Inc.*, 950 F.Supp. 1105, 1107 (D.Ala.1996); *Norris v. C. of Ga. R.R. Co.*, 280 Ga.App. 792, 635 S.E.2d 179, 182-83 (2006); *CSX Transp., Inc. v. Miller*, 159 Md.App. 123, 858 A.2d 1025, 1047-49 (2004); *Elston v.*

MONTGOMERY SCARP MACDOUGALL, PLLC
1218 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone  (206) 625-1801
Facsimile  (206) 625-1807

**B.    Ordinary care must be viewed in light of the normal requirements of the job, "safer" alternatives do not establish negligence, and BNSF has no duty to warn of known or obvious dangers.**

A railroad breaches its duty to its employees when it fails to use ordinary care under the circumstances or fails to do what a reasonably prudent person would have done under the circumstances to make the working environment reasonably safe; meaning that BNSF need not provide an absolutely safe or perfectly safe working environment.[10] The United States Supreme Court and federal courts have repeatedly stated that negligence is not presumed from the mere fact of an accident or injury.[11]

Even where there is evidence of an alternative method of operation that is safer, failure to use such method does not establish negligence.[12]

It is not a surprise, then, that a plaintiff may not recover simply because of conditions encountered as part of his job requirements.[13] As the First Circuit explained in *Conway v. Consolidated Rail Corporation*: "[r]easonable care must be reasonable in light of the normal requirements of the job. A yardman dealing with moving cars cannot expect the same safety as a clerical worker in a ticket office."[14] In *Conway*, a conductor was helping a passenger when the passenger dropped a suitcase and injured the

_____

*Union Pac. R.R. Co.*, 74 P.3d 478, 486-88 (Colo. Ct. App. 2003); *Key v. Norfolk S. Ry. Co.*, 228 Ga.App. 305 (1997).

[10] 45 U.S.C. § 51; *Tiller v. Atl. C.L.R. Co.*, 318 U.S. 54, 67, 63 S.Ct. 444, 87 L.Ed. 610 (1943); *Aparicio v. Norfolk & W. Ry.*, 84 F.3d 803, 811 (6th Cir.1996), abrogated in part on other grounds by *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (stating that "a railroad breaches its duty to its employees by failing to provide a safe working environment if it knew or should have known that it was not acting adequately to protect its employees").

[11] *See, e.g., Gottshall*, 512 U.S. 532; *Missouri Pacific RR. Co. v. Aeby*, 275 U.S. 426, 430, 48 S.Ct. 177, 72 L.Ed. 351 (1928) ("No employment is free from danger. Fault or negligence on the part of petitioner may not be inferred from the mere fact that respondent fell and was hurt.").

[12] *Atlantic Coast Line R.R. v. Dixon*, 189 F.2d 525, 527 (5th Cir. 1951); *Isgett v. Seaboard Coast Line R.R.*, 332 F. Supp. 1127 (4th Cir. 1971); *S. Ry. v. Fox*, 339 F.2d 560 (5th Cir. 1964); *Anderson v. Elgin, Joliet & E. Ry.*, 227 F.2d 91 (7th Cir. 1955); *Ewing v. St. Louis S.W. Ry.*, 772 S.W.2d 774,776 (Mo. Ct. App. 1989).

[13] *See Stevens v. Bangor & Aroostook R. Co.*, 97 F.3d 594, 598 (1st Cir.1996) (stating "[t]he employer's duty to maintain a safe workplace does not require all dangers to be eradicated, but it does demand the elimination of those that can reasonably be avoided *in light of the normal requirements of the job*" (emphasis added)).

[14] *Conway v. Consol. Rail Corp.*, 720 F.2d 221, 223 (1st Cir.1983).

**MONTGOMERY SCARP MACDOUGALL, PLLC**
1218 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone  (206) 625-1801
Facsimile  (206) 625-1807

DEFENDANT BNSF'S TRIAL BRIEF- 5

conductor. The court explained that handling luggage was simply "part of the work" of a conductor and thus the plaintiff-conductor could not show negligence on the railroad's behalf.[15]

And as the District Court of Ohio very recently held in *Potrykus v. CSX Transportation, Inc.*, a "plaintiff cannot recover simply by showing that his injury is in some way related to his job, or merely because his job . . . required 'bending, crawling, kneeling, squatting, climbing and walking on ballast.'"[16]

**(i)      *No duty to provide an absolutely safe place to work, and the fact that the workplace may be dangerous does not establish negligence.***

In establishing the railroad's duty in FELA cases, the courts have consistently held that the railroad is not required to furnish an absolutely safe workplace. Rather, the railroad's duty is simply to exercise reasonable and ordinary care to provide a reasonably safe place for the work to be performed.[17]

Similarly, mere proof that the workplace can be a dangerous place to work does not make the employer liable, because "no employment is free from danger."[18] The test is whether the employer has exercised reasonable care and diligence to make the workplace reasonably safe and whether "[t]he defect to form the basis for a cause of action [was] one which implies negligence on the part of the employer, or those for whose acts he is answerable."[19]

**(ii)     *No duty to warn of a known or obvious danger.***

Even if a danger exists, there is no duty to warn of danger under the FELA unless there is reason to believe those likely to be affected will not recognize the dangerous

---

[15] *Conway*, 720 F.2d at 223.

[16] *Potrykus v. CSX Transp., Inc.*, 2010 WL 2898782, 5 (D.Ohio, July 21, 2010) (citations omitted).

[17] *Brady v. Southern Ry. Co.*, 320 U.S. 476 (1943).

[18] *Id. (*citing *Aeby*, 275 U.S. 426).

[19] *Chicago, R.I.&P. RR. Co. v. Lint*, 217 F.2d 279 (8th Cir. 1954); *McGivern*, 132 F.2d at 217.

DEFENDANT BNSF'S TRIAL BRIEF- 6

MONTGOMERY SCARP MACDOUGALL, PLLC
1218 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone  (206) 625-1801
Facsimile  (206) 625-1807

condition.[20] To require an employer to warn employees, the danger must be one known to the employer and unknown to the employee.[21] If the employee obtained knowledge of danger from any source, the employer's failure to warn was not culpable.[22]

**2.      An issue of preclusion arises where federal regulations cover (and conflict with) an FELA claim, or when the repercussions of the FELA claim would unlawfully interfere with interstate commerce.**

Where a FELA negligence claim directly conflicts with a Federal Regulation, or unreasonably burdens interstate commerce by interfering with railroad operations, the FELA negligence claim is superseded/precluded.

**A.      Preclusion, not preemption, is the proper legal analysis when two federal statutes conflict.**

Because the FELA is a federal law, the legal event triggered by a superseding federal statute is an issue of preclusion, although FELA preemption analyses provide some helpful guidelines.

**B.      A claim that working on mainline ballast is unsafe may be precluded/ superseded by the Federal Railway Safety Act.**

To the extent that a FELA claim involves a safety issue, preclusion analysis is undertaken in the context of the FRSA. The FRSA's purpose is "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."[23]

The FRSA authorizes the Secretary of Transportation ("Secretary") to "prescribe regulations and issue orders for every area of railroad safety."[24] The Federal Railway Safety Act also states that:

---

[20] *Holladay v. Chicago, B & Q.R. Co.*, 255 F.Supp. 879 (1966).

[21] *Ward v. Maine Cent. R. Co.*, 166 A. 826, 132 Me. 88 (1933).

[22] *Hopkins v. Spokane, P. & S. Ry. Co.*, 298 P. 914, 137 Or. 287 (1931).

[23] *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 347, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000) (quoting 49 U.S.C. § 20101).

[24] *Id.* (quoting 49 U.S.C. § 20103(a)).

**MONTGOMERY SCARP MACDOUGALL, PLLC**
1218 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone  (206) 625-1801
Facsimile  (206) 625-1807

(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.

(2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order–

> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;

> (B) is not incompatible with a law, regulation, or order of the United States Government; and

> (C) does not unreasonably burden interstate commerce.[25]

The FRSA's preemption clause insures uniformity among the states and provides that any regulation authorized under the FRSA that covers the field will preempt any state law or statute in that field. The seminal Supreme Court case that interpreted the FRSA's preemption clause to bar state law negligence claims was *CSX Transportation, Inc. v. Easterwood*, in which the Supreme Court ruled that the federal speed limits prescribed in 49 C.F.R. § 213.9 preempt state causes of action that seek to impose greater speed restrictions upon railroads.[26]

*Easterwood* involved the interplay between the FRSA's preemption clause and state law negligence claims; however, district courts and federal appellate courts have used this decision for guidance when applying the FRSA to FELA claims brought by railroad workers (i.e., determining preclusion). Courts have concluded that the FRSA can preclude a cause of action under the FELA; for example, where a railroad employee claims an injury from negligently excessive train speed, but the train was not exceeding the speed limit set by FRA regulations.[27] As the Second, Fifth and Seventh Circuits have

---

[25] 49 U.S.C. § 20106.

[26] *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 676, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).

[27] The FRA speed limits are found in 49 C.F.R. § 213.9.

**MONTGOMERY SCARP MACDOUGALL, PLLC**
1218 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone  (206) 625-1801
Facsimile  (206) 625-1807

1  reasoned, permitting such FELA claims would be contrary to Congress' intent [in

2  passing the FRSA] that railroad safety regulations be nationally uniform to the extent

3  practicable'" and that "it would seem absurd to reach a contrary conclusion . . . when

4  the Supreme Court has already found that the conduct is not culpable negligence."[28]

5  **C.    If the repercussions of a FELA claim would impact railroad operations and

6  dispatch procedures, that claim is precluded by the Interstate Commerce Commission Termination Act.**

7       To the extent that the direct consequence of an FELA claim would amount to

8  regulating BNSF's operations, preemption analysis is appropriate under the Interstate

9  Commerce Commission Termination Act ("ICCTA").[29]

10      Congress and the courts have "long recognized a need to regulate railroad

11  operations at the federal level," and "Congress' authority under the Commerce Clause

12  to regulate the railroads is well established."[30]

13      The ICCTA contains a clear preemption/preclusion clause, granting the Surface

14  Transportation Board ("STB") exclusive jurisdiction over nearly all matters of rail

15  regulation.[31] Under 49 U.S.C. § 10501(b), the STB has exclusive jurisdiction over:

16      (1) ***transportation by rail carriers***, and the remedies provided in this part
        [49 USCS §§ 10101 et seq.] with respect to rates, classifications, ***rules***

17      (including car service, interchange, and other operating rules), ***practices,
        routes, services, and facilities of such carriers***; and

18

19      (2) the construction, acquisition, operation, abandonment, or
        discontinuance of spur, industrial, team, switching, or side tracks, or

20      facilities, even if the tracks are located, or intended to be located, entirely
        in one State. . . .

21

22      [28] *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 86 (2nd Cir. 2006); *Waymire v. Norfolk S. & W. Ry. Co*,
        218 F.3d 773, 776 (7th Cir. 2000); *Lane*, 241 F.3d at 443 (5th Cir.2001); *see also Rice*, 955 F.Supp. at 740-41

23      (D.Ky.1997) ("To the extent that they are inconsistent, the FRSA will supersede the FELA based on the policy
        embodied in the FRSA to ensure uniformity in law pertaining to railway safety."); *Thirkill*, 950 F.Supp. at 1107

24      (D.Ala.1996) ("Because the train was traveling within the speed restrictions set by regulation, any speed claim . . .
        would be precluded by federal law under *Easterwood*."); *see also* 49 U.S.C. § 20106 ("Laws, regulations, and orders
        related to railroad safety shall be nationally uniform to the extent practicable.").

25      [29] *See* 49 U.S.C. § 10501(b).

26      [30] *City of Auburn v. U.S. Govt.*, 154 F.3d 1025, 1029 (9th Cir. 1998).

27      [31] Congress enacted the Interstate Commerce Commission Termination Act ("ICCTA") in 1995 to
        deregulate the railroad industry. *See* 49 U.S.C. § 10101 *et seq*.

**MONTGOMERY SCARP MACDOUGALL, PLLC**
1218 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone (206) 625-1801
Facsimile (206) 625-1807

1    Moreover, the ICCTA contains an express preemption clause which states:

2    Except as otherwise provided in this part, the remedies provided under this
     part with respect to regulation of rail transportation *are exclusive and*
3    *preempt the remedies provided under Federal or State law.*[32]

4    One of the first cases to analyze ICCTA preemption held "[i]t is difficult to

5    imagine a broader statement of Congress' intent to preempt state regulatory authority

6    over railroad operations."[33] Since then, the effect of the last sentence of section

7    10501(b) has been examined by courts in virtually every jurisdiction, which have

8    consistently ruled that the ICCTA supersedes attempts to regulate railroad operations.[34]

9    Because the ICCTA by its terms directly and clearly supercedes conflicting

10   *federal* law as well as state law, the question is simple: would Balsley's claim regulate

11   railroad operations and thus trespass upon the STB's exclusive jurisdiction?

12   **3.    The measure of damages is governed by a uniform federal standard.**

13   **A.    Generally.**

14   The measure of damages is governed by federal law. Mr. Balsley can recover lost

15   earnings, medical expenses, and a reasonable allowance for the pain caused by the

16   injury. He is not entitled to recover damages for past temporary total disability, past and

17   future permanent partial disability, past and future mental and emotional distress or past

18   and future partial loss of enjoyment of life.[35]

19

20       [32] 49 U.S.C. § 10501(b) (emphasis added). The definition section of the ICCTA states "rail carriers" include
21   persons providing "railroad transportation" for compensation, and that "railroad" includes a bridge used by or in
     connection with a railroad. 49 U.S.C. § 10102(5), (6)(A).

22       [33] *CSX Transp., Inc. v. Georgia Pub. Serv. Comm.*, 944 F.Supp. 1573, 1581 (N.D. Ga. 1996). ICCTA
     preemption is not preconditioned on either an effect on interstate commerce or compelled capital expenditures by
23   BNSF. *See CSX Transp. v. AEP Kentucky Coal*, 360 F.Supp.2d 836, 843 (E.D. Ky. 2004).

24       [34] *See, e.g., City of Auburn*, 154 F.3d at 1031 (ICCTA preempts state and local environmental review laws
     as applied to reopening of rail line); *City of Seattle v. Burlington N. R.R.*, 145 Wn.2d 661, 668, 41 P.3d 1169 (2002)
     (city's anti-blocking statute preempted by ICCTA); *R.R. Ventures, Inc. v. STB*, 299 F.3d 523, 563 (6th Cir. 2002)
25   (state statutes allowing towns to regulate land use and requiring public roads be kept open and nuisance-free
     preempted by ICCTA to the extend said laws impinge upon the STB's exclusive jurisdiction over rail
26   transportation); *Cedarapids Inc. v. Chicago, Cent. & Pac. R.R. Co.*, 265 F.Supp.2d 1005, 1015 (N.D. Iowa 2003)
     (state law providing for reversion of railroad right-of-way after railroad abandonment preempted).

27       [35] *See Norfolk & Western Railway Co. v. Liepelt*, 444 U.S. 490 (1980); *Ballentine v. Central Vermont
     Railway*, 460 F.2d 540 (3rd. Cir. 1972).

**MONTGOMERY SCARP MACDOUGALL, PLLC**
1218 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone  (206) 625-1801
Facsimile  (206) 625-1807

1    The amount of lost earnings is to be calculated by taking the amount plaintiff

2    would have earned had he not incurred injury, less the amount he may be reasonably

3    expected to earn despite his injuries.[36]

4    **B.    Lost future earnings must be adjusted and discounted.**

5    Evidence of the impact of income tax on gross earnings must be admitted and the

6    amount of those taxes must be deducted from the gross earnings.[37] Work expenses

7    which are un-reimbursed, such as union dues, commuting expenses, work clothing, etc.,

8    must also be deducted from earnings.[38]

9    Future lost earnings are adjusted for taxes and expenses and must be discounted

10   to present value.[39] Where the injured person retains some earning capacity, he is entitled

11   to the present worth of the difference between the amount he would have made minus

12   the injury and the amounts he can now be expected to make.

13   **C.    Defendant is not liable for damages resulting from causes other than its**
       **negligence.**

14

15   BNSF is not liable for injury or conditions resulting from causes other than its

     negligence.[40]

16

17   The burden rests upon a plaintiff to prove the amount of damages which
     proximately results from the event which forms the basis of his claim. If the
     evidence is so evenly balanced that the finder of the facts 'cannot make a

18   determination, then ***the finding should be against – not in favor of – the***
     ***litigant having the burden of proof***. See McCormick, Evidence § 317, at 671

19   (1954).[41]

20

21

---

22   [36] *Halladay v. Great Northern RR Co.*, 244 Minn. 81, 69 NW 2d 673, *cert. denied*, 350 U.S. 874, 76 S.Ct.
     119 (1955).

23
     [37] *Norfolk v. Western Ry. Co. v. Liepelt*, 445 U.S. 972, 100 S.Ct. 1667 (1980); *Burlington Northern, Inc. v.*
24   *Boxberger*, 529 F.2d 284 (9th Cir. 1975).

25   [38] *Jones v. Laughlin Steel Corp. v. Pfeiffer,* 103 S.Ct. 2541 (1983).

     [39] *St. Louis Southwestern Railway v. Dickerson*, 470 U.S. 409, 105 S.Ct. 1347 (1985).
26
     [40] *Moody v. Maine Central Railroad Co.*, 823 F.2d 693 (1st Cir. 1987).
27
     [41] *Sweet Milk Co. v. Stanfield*, 353 F.2d 811, 812 (9th Cir. 1965) (emphasis added).

MONTGOMERY SCARP MACDOUGALL, PLLC
1218 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone  (206) 625-1801
Facsimile  (206) 625-1807

**D.    Plaintiff may not recover damages which he could avoid by making reasonable effort.**

Plaintiff has a legal obligation to make reasonable efforts to mitigate any loss caused by the defendant. This rule was explained in the context of an FELA action in *Jones v. Consolidated Rail Corp.*, 800 F.2d 590 (6th Cir. 1986), as follows:

> An injured party is under a legal obligation to mitigate his damages, that is, to minimize the economic loss resulting from his injury, by resuming gainful employment as soon as such can be reasonably done, if such is available. If he does not resume available employment even though he is physically able to do so, such person may not recover damages for earnings lost after the date on which he was or reasonably could have been able to return to some form of gainful employment to the extent that such damages could have been mitigated.[42]

In *Baker v. Baltimore & Ohio Railway Co.*, 502 F.2d 638 (6th Cir. 1974), the Court explained what factors can be considered in determining whether the plaintiff has made reasonable efforts to mitigate:

> The law does require that any person who sustains a personal injury must mitigate his damage to the extent reasonably possible. Therefore, with respect to any claim of the plaintiff concerning a reduction in earning power, future lost wages or any inability to earn as much in the future as he would have been able to earn but for the injury sustained in December of '70, the plaintiff was required to mitigate his damage, and such mitigation may include further scholastic training, vocational or rehabilitation training or any other preparation reasonably necessary to improve the plaintiff's earning ability in the light of his injury.[43]

The question whether plaintiff made a reasonable effort to find substitute employment under the circumstances is a question of fact for the jury, and defendant is entitled to an instruction on failure to mitigate if there is evidence in the record to support it.[44] Where there is such evidence the refusal to give an instruction is error.[45]

---

[42] *Jones v. Consolidated Rail Corp.*, 800 F.2d 590, 593 (6th Cir. 1986).

[43] *Baker v. Baltimore & Ohio Railway Co.*, 502 F.2d 638, 644 (6th Cir. 1974).

[44] *Trejo v. Denver & Rio Grande Railroad Co.*, 568 F.2d 181 (10th Cir. 1977).

[45] *Id.* at 184.

**MONTGOMERY SCARP MACDOUGALL, PLLC**
1218 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone  (206) 625-1801
Facsimile  (206) 625-1807

DEFENDANT BNSF'S TRIAL BRIEF- 12

**E.     Defendant is entitled to apportionment for plaintiff's preexisting damages.**

Plaintiff suffered an injury to his lower back in 1989 and underwent fusion surgery at the L4-5 level at that time.  Plaintiff suffered no injury to his back at the time of the 2006 incident while detraining his locomotive, but reported that he injured his back when he fell in 2007 allegedly as a result of his ankle injury.  Plaintiff eventually underwent another surgery to strengthen the original fusion site which had weakened over the 20 years since that surgery.  Accordingly, to the extent liability attaches for plaintiff's back injury – which BNSF disputes – an instruction regarding apportionment is proper.

**F.     Defendant BNSF is not liable for any medical expenses which have been paid by plaintiff's health care policy, as they are not a collateral source.**

It is well-established under FELA case law that the plaintiff's employer is not liable for medical expenses which have been paid by his health care policy, which is a medical insurance policy provided by defendant to its employees pursuant to a collective bargaining agreement. The courts have held that in light of the language of the collective bargaining agreement, the medical benefits provided under this policy are not a collateral source and that employees may not recover medical expenses which have been paid under the policy.[46] Therefore, in the usual FELA case, where the plaintiff's medical expenses have been paid, evidence of such expenses is usually deemed inadmissible.[47]

## CONCLUSION

The issues for trial in this case include:

(a)     Did plaintiff prove by a preponderance of the evidence that defendant BNSF was negligent by allowing its employee to detrain onto defect-free mainline ballast?

---

[46] *Nelson v. Pennsylvania Central R.R. Co.*, 415 F.Supp. 255 (N.D. Ohio 1976); *Folkestad v. Burlington Northern, Inc.*, 813 F.2d 1377 (9th Cir. 1987); *Thomas v. Pennsylvania Central Railroad*, 379 F.Supp. 24 (W.D. Pa. 1974).

[47] *Varhol v. National R.R. Passenger Corp.*, 909 F.2d 1557 (7th Cir. 1990).

**MONTGOMERY SCARP MACDOUGALL, PLLC**
1218 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone  (206) 625-1801
Facsimile  (206) 625-1807

1       (b)    Did BNSF's alleged negligence proximately cause plaintiff's ankle

2  injuries?

3       (c)    Did BNSF's alleged negligence proximately cause plaintiff's back

4  injuries?

5       (d)    Is plaintiff's FELA claim precluded by the Federal Railroad Safety Act?

6       (e)    Is plaintiff's FELA claim precluded by the Interstate Commerce

7  Commission Termination Act?

8       (f)    Did plaintiff fail to mitigate damages as required by the FELA?

9       (g)    Were there any intervening events or superseding causes that caused or

10  contributed to plaintiff's injuries?

11       (h)    Was plaintiff contributorily negligent, and if so, to what extent?

12       (i)    Should plaintiff's damages be apportioned or reduced for causes not

13  recoverable by plaintiff in this lawsuit?

14       (j)    Has plaintiff proved his damages, and if so, what amount?

15       (k)    Has Defendant met its burden of proving its affirmative defenses, and if

16  so, do those defenses preclude or reduce plaintiff's recovery, if any?

17       (l)    Should judgment be entered in favor of Defendant?

18

19     DATED this 22nd day of November, 2010.

20                       MONTGOMERY SCARP MacDOUGALL, PLLC

21

22                     /s/ Bradley Scarp

                      Bradley Scarp, WA. Bar No.21453

23                     Kelsey Endres, WSBA No. 39409

                      Of Attorney for Defendant

24                     BNSF Railway Company

25

26

27

**MONTGOMERY SCARP MACDOUGALL, PLLC**
1218 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone  (206) 625-1801
Facsimile  (206) 625-1807

1

## Certificate of Service

2       I am over the age of 18; and not a party to this action.  I am the assistant to an attorney with
Montgomery Scarp MacDougall, PLLC, whose address is 1218 Third Avenue, Suite 2700, Seattle,
3    Washington, 98101.

4       I hereby certify that a true and complete copy of *DEFENDANT BNSF'S TRIAL BRIEF* has
been filed with the U.S. District Court via the ECF system which gives automatic notification to the
5    following interested party:

6

Paul S. Bovarnick
7    Eddie Medina
Rose, Sanders & Bovarnick, LLP
8    1205 NW 25th Avenue
Portland, OR 97210
9    Telephone: (503) 227-2486
Facsimile: (503) 226-3131
10   PBovarnick@RSBLaw.net

11      I declare under penalty under the laws of the State of Washington that the foregoing
information is true and correct.
12
       DATED this 22nd day of November, 2010, at Seattle, Washington.
13

14                                          s/ Allison Whitney
                                            Allison Whitney, paralegal
15

16

17

18

19

20

21

22

23

24

25

26

27

MONTGOMERY SCARP MACDOUGALL, PLLC
1218 Third Avenue, Suite 2700
Seattle, Washington 98101
Telephone  (206) 625-1801
Facsimile  (206) 625-1807

DEFENDANT BNSF'S TRIAL BRIEF- 15